J-A15022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARRYL SEALS | |
| Appellant | No. 1030 EDA 2020 |

Appeal from the PCRA Order Entered February 26, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003047-2013

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARRYL SEALS | |
| Appellant | No. 1031 EDA 2020 |

Appeal from the PCRA Order Entered February 26, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003049-2013

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARRYL SEALS | |
| Appellant | No. 1032 EDA 2020 |

Appeal from the PCRA Order Entered February 26, 2020

J-A15022-21

In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003051-2013

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 21, 2022**

Appellant, Darryl Seals, appeals from the February 26, 2020 orders[1]

dismissing without a hearing his petition pursuant to the Post Conviction Relief

Act ("PCRA"), 42 Pa.C.S.A. § 9541-46. We affirm.

A prior panel of this Court recited the pertinent facts:

> Appellant's convictions arose from an incident that occurred
> in the Gold Coast Lounge in Philadelphia, Pennsylvania. On
> December 30, 2012, Shaquille Jones (Shaquille) was acting as a
> DJ for a family event there. An altercation occurred around 2:00
> a.m. involving the family, along with two men and two women.
> Those four individuals eventually left the location. Subsequently,
> Shaquille went to the downstairs of the bar to talk to his family,
> and the two men involved in the previous altercation came back
> into the bar through a backdoor. One of the men shot Shaquille
> in the leg then attempted to shoot Shaquille while he was down,
> but the gun did not fire that second time. Victims Robert Edwards
> and Aaron Douglas were also shot during this altercation.
>
> Video of this shooting, eventually obtained by police from
> Florence Furman [Furman], a co-owner of the Gold Coast Lounge,
> was released to the media in January of 2013. Appellant and co-
> defendant, Paul Holloway, were identified as the shooters. Both
> were arrested and charged with numerous offenses, including
> attempted murder and conspiracy to commit murder, in
> connection with these shootings.

***Commonwealth v. Seals***, No. 2819 EDA 2016, 2018 WL 2010449, at *1 (Pa.

Super. April 30, 2018).

---

[1] Appellant filed separate notices of appeal at each docket number.

Appellant's trial began on January 26, 2016. On February 2, 2016, a jury found him guilty of attempted murder, two counts of conspiracy to commit murder, three counts of aggravated assault, carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, and possession of an instrument of crime.[2] On April 15, 2016, the trial court imposed an aggregate 45 to 90 years of incarceration. This Court affirmed the judgment of sentence on April 30, 2018. Our Supreme Court denied allowance of appeal on November 15, 2018.

Appellant filed a timely, counseled first PCRA petition on February 27, 2019. After providing notice of its intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907, the PCRA court entered the order on appeal. Appellant presents four questions:

1. Did trial counsel provide ineffective assistance by failing to properly object and preserve the issue when the incriminatory statement of Florence Furman, a non-testifying witness, was presented as evidence?

2. Did trial counsel provide ineffective assistance by failing to object when the trial court told the jury that Appellant had successfully prevented witnesses from testifying?

3. Did trial counsel provide ineffective assistance by failing to object to the prosecutor's closing argument that codefendant Paul Holloway did not testify and had conspired with Appellant to commit this crime?

4. Did trial counsel provide ineffective assistance by failing to request that the jury be polled?

---

[2] 18 Pa.C.S.A. §§ 901, 2502, 903, 2702, 6106, 6108, and 907, respectively.

- 3 -

Appellant's Brief at 3. Appellant argues that he was entitled to an evidentiary hearing on each of these issues. ***Id.***

On review, "we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011). We review the PCRA court's legal conclusions *de novo*. ***Id.***

> To prevail on a petition for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his or her conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). These circumstances include a violation of the Pennsylvania or United States Constitution or ineffectiveness of counsel, either of which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i) and (ii). In addition, a petitioner must show that the claims of error have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An issue has been waived "if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S. § 9544(b). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2).

***Id.***

Here, Appellant claims that trial counsel rendered constitutionally ineffective assistance. Appellant must therefore overcome the presumption of counsel's effectiveness by pleading and proving, by a preponderance of the evidence, that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the disputed action or inaction; and (3) that Appellant was prejudiced such that there is a reasonable probability that the

outcome of the proceeding would have been different but for counsel's error. ***Id.*** at 259-60.

We have reviewed the record, the parties' briefs, the applicable law, and the PCRA court's opinion of September 30, 2020. We conclude that the PCRA court's opinion accurately addresses each of the questions Appellant presents for our review. We affirm the order on appeal for the reasons explained in the September 30, 2020 opinion. In addition, we make the following observations as to each of Appellant's arguments.

Throughout his brief, Appellant fails to develop any specific argument as to each prong of ineffective assistance of counsel. Further, he does not develop his first three arguments with citations to pertinent authority, in violation of Pa.R.A.P. 2119(b).[3]

In his first argument, Appellant claims counsel was ineffective for failing to object to the introduction of out-of-court statements made by Florence Furman, the grandmother of Appellant's child. Furman did not testify at trial. The PCRA court explained:

> At trial, the Commonwealth filed a motion to admit the prior statement of witness Florence Furman, co-owner of the Gold Coast Lounge, Pursuant to Pa.R.E. 804(b)(6).[4] Ms. Furman, as owner

---

[3] Failure to develop an argument with citation to pertinent authority results in waiver. ***Commonwealth v. Mulkin***, 228 A.3d 913, 917 (Pa. Super. 2020).

[4] "(6) *Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability.* A statement offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result." Pa.R.E. 804(b)(6).

of the God Coast Lounge, later furnished to Philadelphia Police a video of the incident and authored a statement to police identifying Appellant as one of the shooters. Ms. Furman was able to identify Appellant because he is the father of her daughter's child. The Commonwealth wished to have Ms. Furman's statement read into evidence because it was the Commonwealth's belief that Appellant had wrongfully caused Ms. Furman's unavailability as a witness.

An advocate from the Philadelphia District Attorney's Office had several communications with Ms. Furman in which she wavered on appearing as a witness, ending with a final voicemail in which Ms. Furman's voice is overheard speaking to a person in the background that she would go to another person's home so that the police could not find her. The trial court granted the Commonwealth's motion on the basis that Ms. Furman's unavailability was consistent with information obtained from phone calls by Appellant while incarcerated and attempts to bribe other witnesses.

[…]

In another jail telephone transcript, Appellant confirms that the 'only thing he [Appellant's trial counsel] really worried about is homegirl mom [Ms. Furman]' testifying at trial. After Appellant acknowledged that it would be 'better' for him if Ms. Furman did not testify, Appellant stated, 'I talked to her and she said she probably, you know what I mean, fall back.' Appellant further clarified and stated, 'she [Ms. Furman] ain't gonna.' During the same conversation, Appellant and his friend discussed the process of finding a missing witness. Appellant's friend noted that the police, acting on a bench warrant, arrive at a witness' home the morning of trial. Appellant's friend then stated, 'if you ain't around to be found,' to which Appellant filled in the blank and replied, 'there ain't nothing.'

In addition to the transcribed jail telephone conversations, the Commonwealth provided testimony from Ms. Furman's elder victim advocate, Ms. Catherine Khuu. Ms. Khuu testified that Ms. Furman left her three voice messages; in the first message, Ms. Furman agrees to appear in court. However, during the first message, because Ms. Furman did not successfully end the call [sic] Ms. Khuu heard Ms. Furman say, 'I called the lady at the DA's office like you told me to and I told her that I will be in court, but I'm going to do like you said and I'm going to go to my sister's

- 6 -

house or someone else's house instead so if or when they come here to find me, they won't find me.'

PCRA Court Opinion, 9/30/20, at 2, 7 (record citations omitted). Given the strong evidence of witness tampering, which the jury clearly credited, the PCRA court held that any objection to the admission of Ms. Furman's out of court statement would have been futile. We discern no error in the PCRA court's conclusion that this issue lacks arguable merit.

Next, Appellant argues trial counsel was ineffective for failing to object when the trial court stated, during jury instructions, that Appellant successfully tampered with Commonwealth witnesses.[5] As the PCRA court explains in its opinion, trial counsel did object. Further, the trial court's instruction stated: "You **heard evidence** that [Appellant] attempted to and in this case, successfully prevent [sic] a witness from testifying in court." PCRA Court Opinion, 9/30/20, at 11; N.T. Trial, 1/29/16, at 46 (emphasis added). Thus, the instruction, to which trial counsel objected, accurately

_____

[5] We review this issue as follows:

> When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009) (internal citations and quotation marks omitted).

- 7 -

informed the jury that it heard evidence (summarized above) that Appellant succeeded in preventing an adverse witness from testifying. The instruction also informed the jury that the jury must decide whether this evidence tended to prove guilt. The trial court never instructed the jury that it must credit the evidence of Appellant's jury tampering. For the reasons explained on pages nine through twelve of the PCRA court's opinion, we agree that this issue lacks arguable merit.

Third, Appellant argues counsel was ineffective for failing to object during the Commonwealth's closing argument when the prosecutor implied that Appellant intimidated non-testifying codefendant Paul Holloway.[6] Appellant claims the prosecutor's closing argument invited an unwarranted inference that Holloway would have provided incriminating testimony.

---

[6] We observe on review:

> A prosecutor has great discretion during closing argument; indeed, closing 'argument' is just that: argument. [T]he prosecutor must limit his argument to the facts in evidence and legitimate inferences therefrom. However, the prosecutor must have reasonable latitude in [fairly] presenting [a] case [to the jury,] and must be free [to present] his [or her closing] arguments with logical force and vigor. Therefore, [c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

*Commonwealth v. Eichinger*, 108 A.3d 821, 836 (Pa. 2014) (internal citations and quotation marks omitted).

Appellant's argument on this point contains only a single citation to **Delaware v. Van Arsdall**, 475 U.S. 673 (1986), which he cites in support of his Sixth Amendment right to cross examine adverse witnesses. Appellant's Brief at 19. He does not develop any argument that the unavoidable effect of the prosecutor's closing was to prejudice the jury. For this reason, and for the reasons explained on pages thirteen through sixteen of the PCRA court's September 30, 2020 opinion, we agree that Appellant has failed to establish that counsel's inaction was prejudicial.

Finally, Appellant argues that counsel was ineffective for failing to poll the jury.[7] The record reveals that the jury had some difficulty reaching a verdict. The jury retired to deliberations on the afternoon of Friday, January 29, 2016. On Monday, February 1, 2016, the jury informed the trial court it had reached a verdict as to some charges but was deadlocked as to others. N.T. Trial, 2/1/16, at 7. The trial court instructed the jury to keep deliberating. *Id.* On February 2, 2016, the trial court noted that it had been informed that one juror Googled the definition of "conspiracy." Also, the trial judge and defense counsel heard yelling from the jury room, including someone saying, "this is bullshit, this is bullshit[.]" N.T. Trial, 2/2/16, at 3 ,8.

Given the apparent impasse, the trial court provided the following charge:

_____

[7] "Before a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party." Pa.R.Crim.P. 648(G).

You will realize of course all the members of the panel that, one, any verdict returned must be a unanimous verdict. Two, that you have a duty to consult with one another and deliberate with a view to reaching an agreement, if it can be done without any violence to your own sense of individual judgment. Three, each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors. And, four, that a juror should not hesitate to reexamine his own views and to change his opinions if he thinks it is erroneous. And, five, that no juror should surrender his honest convictions to the weight or to the effect of the evidence because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

Keeping these instructions in mind, I will be sending you back to deliberate so you can further consider the evidence and the charges of the Court to see if you can arrive at a verdict. If the Court can be of any assistance I will be happy to oblige.

N.T. Trial, 2/2/16, a t 12-13.

The trial court's charge was in accord with *Commonwealth v. Spencer*, 263 A.2d 923 (Pa. Super. 1970). Appellant does not argue that counsel should have objected to the *Spencer* charge. The record reflects that the jury commenced further deliberations at 11:15 a.m. N.T. Trial, 2/2/16, at 14. Shortly thereafter, they returned to the courtroom with two questions, and returned to deliberations at 11:45 a.m. *Id.* at 14-15. At 1:45 p.m., the jurors entered the courtroom with a unanimous verdict. *Id.* at 16-18. The foreperson represented that all twelve jurors agreed. *Id.* at 16. They found Appellant not guilty of attempted murder of Robert Edwards, guilty of conspiracy to murder Robert Edwards, guilty of aggravated assault of Robert Edwards, not guilty of attempted murder of Aaron Douglass, guilty of conspiracy to murder Aaron Douglass, guilty of aggravated assault of Aaron

- 10 -

Douglass, guilty of the attempted murder of Shaquille Jones, guilty of conspiracy to murder Shaquille Jones, and guilty of aggravated assault of Shaquille Jones.[8]   Counsel did not poll the jury, and the record does not contain a signed verdict sheet.

Appellant argues counsel was ineffective for failing to poll the jury based on the jury's apparent difficulty in reaching a verdict.  We observe, as did the trial court, that the **Spencer** charge shortly preceded the jury's verdict.  The **Spencer** charge informed the jurors that they should not surrender their honest convictions or do violence to their individual judgment.  We observe, as did the trial court, that jurors are presumed to follow instructions. **Commonwealth v. Tyson**, 119 A.3d 353, 360 (Pa. Super. 2015), **appeal denied**, 128 A.3d 220 (Pa. 2015).  And, while Appellant argues that the PCRA court should have conducted a hearing on this issue, he never describes what evidence he would have sought to introduce.  For these reasons, and for the reasons explained in the PCRA court's September 30, 2020, opinion, we discern no error in the PCRA court's conclusion that Appellant has failed to establish prejudice.

---

[8]  As noted above, the jury also found Appellant guilty of several firearms offense.

For the foregoing reasons, we affirm the PCRA court's orders dismissing Appellant's PCRA petition without a hearing.[9]  We direct that a copy of the PCRA court's September 30, 2020 opinion be filed along with this memorandum.

Orders affirmed.

The decision was reached prior to the retirement of Judge Musmanno.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2022

---

[9]  Dismissal without a hearing is appropriate where the PCRA court is satisfied that "there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by further proceedings[.]"  Pa.R.Crim.P. 907(1).

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-3047-2013 |
| | : | CP-51-CR-3049-2013 |
| vs. | : | CP-51-CR-3051-2013 |
| | : | |
| DARRYL SEALS | : | SUPERIOR COURT NO. |
| Appellant | : | 1030 EDA 2020 |

## OPINION

KENNEDY, J.                                              September 30, 2020

Darryl Seals (hereinafter "Appellant") appeals from the February 26, 2020, order, entered

in the Philadelphia County Court of Common Pleas, dismissing his petition for relief filed

pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The relevant

facts and procedural history follow below.

## FACTS AND PROCEDURAL HISTORY

The facts of the underlying criminal episode are largely immaterial to the issues on

appeal. Briefly, a previous panel of the Superior Court summarized the facts as follows:

> Appellant's convictions arose from an incident that occurred in the Gold Coast
> Lounge in Philadelphia, Pennsylvania. On December 30, 2012, Shaquille Jones
> (Shaquille) was acting as a DJ for a family event there. An altercation occurred
> around 2:00 a.m. involving the family, along with two men and two women.
> Those four individuals eventually left the location. Subsequently, Shaquille went
> to the downstairs of the bar to talk to his family, and the two men involved in the
> previous altercation came back into the bar through a backdoor. One of the men
> shot Shaquille in the leg then attempted to shoot Shaquille while he was down,
> but the gun did not fire that second time. Victims, Robert Edwards and Aaron
> Douglas, were also shot during this altercation.
>
> Video of this shooting, eventually obtained by police from Florence Furman
> [Furman], a co-owner of the Gold Coast Lounge, was released to the media in
> January of 2013. Appellant and co-defendant, Paul Holloway, were identified as

the shooters. Both were arrested and charged with numerous offenses, including attempted murder and conspiracy to commit murder, in connection with these shootings.

*Commonwealth v. Seals*, 2819 EDA 2016 (Pa. Super. April 30, 2018) (unpublished memorandum).

Jury selection commenced in the case against Appellant on January 26, 2016. At trial, the Commonwealth filed a motion to admit the prior statement of witness Florence Furman, co-owner of the Gold Coast Lounge, pursuant to Pa.R.E. 804(b)(6). Ms. Furman, as owner of the Gold Coast Lounge, later furnished to Philadelphia Police a video of the incident and authored a statement to police identifying Appellant as one of the shooters. Ms. Furman was able to identify Appellant because he is the father of her daughter's child. The Commonwealth wished to have Ms. Furman's statement read into evidence because it was the Commonwealth's belief that Appellant had wrongfully caused Ms. Furman's unavailability as a witness.

An advocate from the Philadelphia District Attorney's Office had several communications with Ms. Furman in which she wavered on appearing as a witness, ending with a final voicemail in which Ms. Furman's voice is overheard speaking to a person in the background that she would go to another person's home so that police could not find her. *See* Comm. Mtn., 1/28/16, at 3. The trial court granted the Commonwealth's motion on the basis that Ms. Furman's unavailability was consistent with information obtained from phone calls by Appellant while incarcerated and attempts to bribe other witnesses. *See* N.T. Jury Trial, 1/28/16, at 48-58.

At the conclusion of testimony, the trial court instructed the jury concerning the impact of witness tampering on Ms. Furman's unavailability at trial. On January 29, 2016, after the jury charge was given, the jurors were excused to begin their deliberations. As the jurors continued

2

deliberations, a report was made to the trial court on February 2, 2016, that some jurors may have searched for the legal definition of "conspiracy" outside of the charge given by the court. After consultation with counsel, the trial court found that prejudice was unlikely to have occurred and permitted jurors to continue deliberations. Later that same day, following a message to the court that the jury may be deadlocked, the trial court gave a *Spencer* charge to the jurors. Shortly thereafter, the jury returned its verdict and found Appellant guilty of attempted murder of Mr. Jones, but acquitted him of attempted murder of the other victims. Appellant was also found guilty of two counts each of conspiracy to commit murder and aggravated assault as to all three victims, as well as several firearms violations.[1] *See Seals*, 2819 EDA 2016, at 2. At sentencing on April 15, 2016, Appellant was sentenced to an aggregate term of 45-90 years' imprisonment for the above convictions.

Appellant filed a timely direct appeal; however, the Superior Court ultimately affirmed his judgment of sentence on April 30, 2018. On February 29, 2019, Appellant – through counsel – filed his first timely petition for relief pursuant to the PCRA. On February 6, 2020, the PCRA court gave notice of its intention to dismiss Appellant's petition without hearing pursuant to Pa.R.Crim.P. 907. The PCRA court later dismissed the petition without hearing on February 26, 2020. On March 11, 2020, Appellant filed a timely notice of appeal to the Superior Court. On March 13, 2020, the PCRA court issued an order pursuant to Pa.R.A.P. 1925(b), requiring Appellant to file a concise statement of errors complained of on appeal with the trial court within 20 days of the order. However, the PCRA court's Order was not mailed until June 10, 2020, due

---

[1] Attempted Murder, (18 Pa.C.S.A. § 901(a)); Conspiracy – Attempted Murder, (18 Pa. C.S.A. § 903); Aggravated Assault, (18 Pa.C.S.A. § 2702(a)); Possession of an Instrument of Crime, (18 Pa.C.S.A. § 907(a)); Possession of Firearm Prohibted, (18 Pa.C.S.A. § 6105(a)(1)); Firearm not to Be Carried, (18 Pa. C.S.A. § 6106(a)(1)); Carrying of Firearms in Public in Philadelphia, (18 Pa.C.S.A. § 6108)), respectively.

3

to the court's shutdown from the novel coronavirus.[2] Appellant filed a responsive 1925(b) Statement on June 24, 2020, and is therefore considered timely.

## MATTERS COMPLAINED ON APPEAL

Appellant's 1925(b) Statement asserts:

1. Trial counsel provided ineffective assistance by failing to properly object and preserve the issue when the incriminatory statement of Florence Furman, a non-testifying witness, was presented as evidence.

2. Trial counsel provided ineffective assistance by failing to object when the trial court told the jury that the [Appellant] had successfully prevented witnesses from testifying.

3. Trial counsel provided ineffective assistance by failing to object to the prosecutor's closing argument that co-defendant Paul Holloway did not testify and had conspired with [Appellant] to commit this crime.

4. Trial counsel provided ineffective assistance by failing to request that the jury be polled.

5. The PCRA court erred in that the above arguments should not have been dismissed without an evidentiary hearing.

## DISCUSSION

Darryl Seals ("Appellant"), appeals from the PCRA court's dismissal of his petition for relief filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. In reviewing the denial of PCRA relief, an appellate court examines whether the PCRA court's determination "is supported by the record and free from legal error." *Commonwealth v. Rainey*, 928 A.2d 215, 223 (Pa. 2007). With great deference afforded to the PCRA court's factual determinations, the

---

[2] Additionally, by Order dated March 16, 2020, the Pennsylvania Supreme Court, upon declaration of a judicial emergency within a judicial district, permitted the president judge of a judicial district to "suspend time calculations for the purposes of time computation relevant to court cases or other judicial business, as well as time deadlines, subject to constitutional restrictions." Pa. Supreme Court Order, Declaring General Statewide Judicial Emergency, at 2. (March 16, 2020).

4

PCRA court's factual findings will not be disturbed unless there is no support for its findings in the certified record. *Commonwealth v. Jonhson*, 966 A.2d 523, 532 (Pa. 2009); *Commonwealth v. Lippert*. 85 A.3d 1095, 1100 (Pa. Super. 2014). Nevertheless, the PCRA court's "legal determinations are subject to plenary review." *Jonhson*, 966 A.2d at 532.

To be eligible for relief under the PCRA, Appellant must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more errors enumerated in section 9543(a)(2). Appellant alleges that he received ineffective assistance of counsel, thereby falling within the PCRA purview. 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, Appellant bears the burden of proving that the alleged "ineffective assistance of counsel which, in the circumstances of [his] case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.*

For reasons that follow, Appellant's claims fail to demonstrate that any alleged constitutional violations so undermined the truth-determining process that no reliable adjudication of guilt could have taken place. Further, the record supports the determination of the PCRA court that Appellant received effective assistance of counsel and was not entitled to an evidentiary hearing. Therefore, the PCRA court properly dismissed Appellant's petition for relief and respectfully requests the decision be affirmed on appeal.

## I. Appellant Did Not Receive Ineffective Assistance of Counsel.

In Appellant's first through fourth matter complained of on appeal, he alleges ineffective assistance of counsel at trial. Counsel is presumed to have rendered effective assistance. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012). To overcome this presumption and establish ineffectiveness, Appellant must show: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered

5

prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such an error. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987); *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005). Counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006).

"Appellant bears the burden of proving all three prongs [citation omitted]; failure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Robinson*, 877 A.2d at 439. Furthermore, a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012).

> **A.   Appellant Did Not Receive Ineffective Assistance of Counsel When Trial Counsel Failed to Object to the Entry of a Non-Testifying Witness' Statements into Evidence, Because Appellant's Underlying Claim is Without Merit.**

In his first matter complained of on appeal, Appellant asserts that trial counsel provided ineffective assistance by failing to properly object, and therefore preserve the issue, when a non-testifying witness' incriminatory statements were presented as evidence. To Appellant's detriment, the underlying claim is without arguable merit. The trial court properly admitted Ms. Furman's testimony under the "forfeiture by wrongdoing" hearsay exception. Because Appellant has not satisfied the first requirement for establishing ineffective assistance of counsel, the PCRA court must conclude that Appellant is not entitled to relief under the PCRA.

The non-testifying witness—Ms. Florence Furman—is the maternal grandmother to Appellant's child and the co-owner of the lounge where the shooting occurred. Commonwealth's Mot. to Dismiss, 11/26/19, at 3. On January 28, 2016, the Commonwealth filed a Motion to

6

Admit Prior Testimony and Statement of Florence Furman under the "forfeiture by wrongdoing" hearsay exception. Pa.R.E. 804(b)(6). The Commonwealth presented evidence which revealed that Ms. Furman—who identified Appellant as the shooter and who was going to be called as a witness—was coerced into not appearing at trial. Commonwealth's Mot. to Admit Prior Test. and Statements, 01/28/2016, at 1-4. Significantly, the Commonwealth presented jail telephone transcripts in which Appellant's child's mother—Ms. Furman's daughter—is told "it's a go for court tomorrow" and is subsequently asked, "is everything in order" to which she confirms. *Id.* at Exhibit A.

In another jail telephone transcript, Appellant confirms that the "only thing he [Appellant's trial counsel] really worried about is homegirl mom [Ms. Furman]" testifying at trial. Commonwealth's Mot. to Dismiss, 11/26/19, at Exhibit A (1/25/13). After Appellant acknowledged that it would be "better" for him if Ms. Furman did not testify, Appellant stated, "I talked to her and she said she probably, you know what I mean, fall back." *Id.* Appellant further clarified and stated, "she [Ms. Furman] ain't gonna." *Id.* During the same conversation, Appellant and his friend discussed the process of finding a missing witness. *Id.* Appellant's friend noted that the police, acting on a bench warrant, arrive at a witness' home the morning of trial. *Id.* Appellant's friend then stated, "if you ain't around to be found," to which Appellant filled in the blank and replied, "there ain't nothing." *Id.*

In addition to the transcribed jail telephone conversations, the Commonwealth provided testimony from Ms. Furman's elder victim advocate, Ms. Catherine Khuu. Ms. Khuu testified that Ms. Furman left her three voice messages; in the first message, Ms. Furman agrees to appear in court. *Id.* at 6. However, during the first message, because Ms. Furman did not successfully end the call Ms. Khuu heard Ms. Furman say, "I called the lady at the DA's Office like you told

7

me to and I told her that I will be in court, but I'm going to do like you said and I'm going to go to my sister's house or someone else's house instead so if or when they come here to find me, they won't find me." Commonwealth's Mot. to Admit Prior Test. and Statements, 1/28/16, at 3.

Significant and informative, the underlying claim in Appellant's first issue has been subject to appellate review. On direct review, Appellant asked the Pennsylvania Superior Court to determine whether the trial court abused its discretion when it admitted Ms. Furman's statements as evidence under the "forfeiture by wrongdoing" hearsay exception. Not only did the Superior Court find that the trial court did not abuse its discretion in admitting Ms. Furman's testimony, the Superior court noted, "even if Appellant had preserved this issue, he would not be entitled to relief." *Commonwealth v. Seals*, 2018 WL 2010449, at *7 (Pa. Super. April 30, 2018) (unpublished memorandum).

Appellant's underlying claim that trial counsel was ineffective because trial counsel did not object to Ms. Furman's testimony is utterly without arguable merit. The Commonwealth provided a plethora of credible evidence that strongly suggested Appellant witness tampered and which justified the trial court's decision to admit Ms. Furman's testimony. The Superior Court upheld the trial court's determination and found it valuable to note that an objection would have been futile. Not only is Appellant's claim without arguable merit, trial counsel had a reasonable basis for failing to object—that is, there were simply no grounds on which trial counsel could have successfully objected.

Thus, Appellant's claim that trial counsel provided ineffective assistance when he failed to object to the admittance of Ms. Furman's statements is without arguable merit. Additionally, as there was no worthwhile objection to be made, trial counsel had a reasonable basis for not

8

objecting. Therefore, Appellant has not satisfied the first, let alone the second, requirement to establish ineffective assistance of counsel and is not entitled to PCRA relief.

### B. Appellant Received Effective Assistance of Counsel because Trial Counsel Objected to the "Consciousness of Guilt" Jury Instruction.

Appellant claims, in his second matter on appeal, that he received ineffective assistance of counsel when trial counsel failed to object to the trial court's jury instruction on consciousness of guilt. Specifically, Appellant alleges that trial counsel should have objected when the trial court informed the jury that Appellant had successfully prevented a witness from testifying. Moreover, Appellant claims the trial court informed the jury that Appellant's witness tampering in fact proves guilt of the crime. PCRA Pet., 2/27/19, at 7. Appellant thereby concludes that the trial court invaded the province of the jury and trial counsel should have objected to the charge. *Id.* Despite Appellant's artful rendition of the trial court's jury instruction, Appellant's claim is without merit.

Initially, the PCRA court notes Appellant's contention that trial counsel failed to object is patently belied by the record – trial counsel did object to the consciousness of guilt and witness tampering charge. The record reflects trial counsel's objection as follows:

| | |
|---|---|
| **The Court:** | Okay. Just so the record is clear, we went back in my robing room, we discussed the charges and after discussing the charges you had objections to two, but I am allowing the charges to be given to the jury. Do you want to make a record of it? |
| **Defense Counsel:** | What I am going to do to make it easier for your stenographer is **I am going to object here to the charge of consciousness of guilt, witness tampering, as well as forfeiture by wrong-doing.** What I will also do, as required by the appellate rule, is when Your Honor is done charging I will go in the back, and so the record should reflect, |

9

even though we won't have to bring the stenographer back, is when we do have that happen, that is what I will be objecting to, those charges after we are done.

N.T. Jury Trial, 1/29/16, at 20 (emphasis added). After the trial court finished relaying the jury instructions, trial counsel renewed his objection to the consciousness of guilt charge as evinced in the following conversation on the record:

| **The Court:** | Do you want to put any objections on the record? |
|---|---|
| **Defense Counsel:** | Yes, Your Honor, the objection we spoke about earlier regarding those two additional charges, I will renew my objection. |

*Id.* at 50-51. Although trial counsel diligently preserved objections to both the "consciousness of guilt" and "forfeiture by wrongdoing" instructions, Appellant raised a claim regarding solely the "consciousness of guilt" charge in his petition for relief and, therefore, is the only jury instruction before the PCRA court.

Turning to the specifics of Appellant's claim, the instruction provided by the trial court clearly, adequately and accurately presented the law to the jury. Our Supreme Court has held that when reviewing a challenge to jury instructions,

> [T]he reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009).

10

Here, Appellant challenges the trial court's "consciousness of guilt" instruction provided to the jury. Pennsylvania Suggested Standard Criminal Jury Instruction 3.14, the "consciousness of guilt" charge, states:

> 1. There was evidence, including the testimony of *[name of witness]*, that tended to show that the defendant [fled from the police] [hid from the police] *[[[[give specifics]*. [The defendant maintains that [he] [she] did so because *[[[[reason]*.] The credibility, weight, and effect of this evidence is for you to decide.
>
> Generally speaking, when a crime has been committed and a person thinks he or she is or may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment.
>
> 2. You may not find the defendant guilty solely on the basis of evidence of flight or concealment.

Pa. SSJI (Crim), § 3.14. The instruction, as provided by the trial court, closely mirrors the suggested standard instruction:

> There is evidence, including the testimony of Katherine Khuu, Detective Daly and presentation of phone calls exchanged and text messages that tend to show that the defendant attempted to conceal evidence. You heard evidence that [Appellant] attempted to and in this case, successfully prevent a witness from testifying in court.
>
> Generally speaking, when a crime has been committed and a person believes that a witness has evidence that would tend to prove his or her guilt, the defendant's effort to conceal that witness or witnesses are circumstances tending to prove the consciousness of guilt. These actions do not necessarily show consciousness of guilt in every case, a person may commit such acts or some other movement or may do so even though innocent. Whether the evidence of witness tampering in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motive that may have prompted [Appellant's] effort.
>
> You may not find [Appellant] guilty solely on the basis of witness tampering.

11

N.T. Jury Trial, 1/29/16, at 46-47. Comparison between the suggested standard instruction and the one provided at trial supports the PCRA court's conclusion that the jury was provided a clear and accurate instruction that reflected the law.

Appellant contends that the trial court "invaded the province of the jury to determine whether or not it was [Appellant] who did prevent a witness from testifying in court." PCRA Pet., 2/27/19, at 7. This claim is without basis since the trial court's instruction states states "[w]hether the evidence of witness tampering should be looked at as tending to prove guilt" is a question that must be decided by the jury. N.T. Jury Trial, 1/29/16, at 47. Further, the trial court – consistent with the suggested standard charge – instructed the jury that it "may not find [Appellant] guilty solely on the basis of witness tampering." *Id.* The jurors are presumed to have followed the trial court's instruction on these points. *See Commonwealth v. Huggins*, 68 A.3d 962, 973 (Pa. Super. 2013) (holding the law presumes that the jury will follow the instructions of the court).

Appellant maintains that to have received effective assistance of counsel, trial counsel needed to object to the trial court's jury charge on consciousness of guilt. Trial counsel in fact objected and renewed his objection to the trial court's instruction on consciousness of guilt. Consequently, Appellant's claim that trial counsel was ineffective for failing to object to the trial court's jury charge on consciousness of guilt is meritless. Even assuming, *arguendo*, that had trial counsel failed to object, Appellant would not be entitled to relief because the trial court's instruction to the jury reflected a clear, accurate, and adequate explanation of the law. Appellant would not have been able to demonstrate ineffective assistance of counsel on this basis because he cannot demonstrate the claim had arguable merit or that he suffered prejudice. Thus, the PCRA court must conclude that Appellant is not entitled to relief.

12

### C. Appellant Did Not Receive Ineffective Assistance of Counsel When Trial Counsel Failed to Present an Alternative Objection to the Prosecutor's Closing Argument Because the Underlying Claim is Without Merit and Appellant Has Not Shown Prejudice.

In his third matter raised on appeal, Appellant contends he received ineffective assistance of counsel when trial counsel failed to object to the prosecutor's closing argument. Appellant particularly takes issue with the prosecutor stating that Appellant's codefendant was not called to testify because the Commonwealth was concerned for the codefendant's safety. PCRA Pet., 2/27/19, at 8. Appellant heeds trial counsel's objection to the prosecutor's statement on the grounds that the Commonwealth failed to present evidence to support its assertion. *Id.*

However, Appellant maintains that trial counsel should have argued the prosecutorial remark lead to an improper inference—which is, Appellant's codefendant was prepared to provide an incriminating testimony. *Id.* Although the PCRA court is inclined to agree that the prosecutor's comment lead to an improper inference, pertinent to the underlying claim, Appellant has not demonstrated unavoidable prejudice. Accordingly, Appellant's underlying claim is without arguable merit. Additionally, Appellant has not shown that he suffered prejudice as a result of trial counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such an error—a necessary requirement for establishing ineffective assistance of counsel. Thus, Appellant is not entitled to relief under the PCRA.

During closing arguments, prosecutors are afforded great discretion. *Commonwealth v. Brown,* 911 A.2d 576, 580 (Pa. Super. 2006). The Supreme Court of Pennsylvania has reasoned that prosecutors "must have reasonable latitude in presenting [their] case and must be free to make [their closing] arguments with logical force and vigor." *Commonwealth v. Johnson,* 533 A.2d 994, 996 (Pa. 1987) (citation omitted). Despite this breadth of discretion, prosecutors must

13

ensure that their closing arguments are limited to "the facts in evidence and legitimate inferences therefrom." *Commonwealth v. Gilman,* 368 A.2d 253, 257 (Pa. 1977).

When on review, "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v. Bryant,* 67 A.3d 716, 727 (Pa. 2013) (internal markings and citations omitted). The Pennsylvania Supreme Court has emphasized that the reviewing court's "attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Commonwealth v. Lewis,* 39 A.3d 341, 352 (Pa. Super. 2012) (internal quotes and citations omitted). Therefore, "not every inappropriate remark by a prosecutor constitutes reversible error." *Id. Accord Commonwealth v. Clancy,* 192 A.3d 44, 63 (Pa. 2018) (citation omitted).

Specifically, to determine whether a prosecutor's remarks are inevitably prejudicial, the prosecutor's comments must be viewed in context—that is, the reviewing court must consider the issues at trial and elements of the case. *Lewis,* 39 A.3d at 352; *Clancy,* 192 A.3d at 62. After determining the context, and therefore the "bounds of permissible argument," the reviewing court must perform a two-step analysis: first, the court must scrutinize the substance of the statement to determine whether the remark "reasonably relates to the facts of the case"; second, the court must ascertain whether the statement has impeded the jury's ability to decide the case solely on the evidence. *Clancy,* 192 A.3d at 62-63.

The Pennsylvania Supreme Court has held that a prosecutor's comments are impermissible "where the language and inferences of the summation no longer relate back to the evidence on the record." *Johnson,* 533 A.2d at 996. However, carving a caveat, our Supreme Court has held "[a] remark by a prosecutor, otherwise improper, may be appropriate if it is in fair

14

response to the argument and comment of defense counsel." *Commonwealth v. Trivigno*, 750 A.2d 243, 249 (Pa. 2000).

The record reflects the prosecutor's contested remarks as follows:

> You will notice that I didn't call Paul Holloway. And why is that, Ladies and Gentlemen, if he can get access to witnesses on the street, if you have the audacity, if the defendant and his family who have been in here all week had the audacity to get rid of a 73 year old woman, what do you think they are going to do to another person in prison. The defendant's own words, to his friend, with someone on his own cell block, with a target attached to him on his forehead, he has access to the family. So I cannot in good conscious call Paul Holloway in here to testify…[T]here has been blatant and disrespectful intimidation through this entire trial.

N.T. Jury Trial, 1/29/16, at 24-25. The Commonwealth argues that the prosecutor's closing argument was directly related to her opening statement. Commonwealth's Mot. to Dismiss, 11/26/2019, at 18. At trial the Commonwealth asserted that the prosecutor's opening statement informed the jury that the Commonwealth would present evidence of the codefendant being intimidated. N.T. Jury Trial, 1/29/16, at 33-34. Consequently, the prosecutor found it proper to explain in her closing argument why the promised evidence was not presented. Commonwealth's Mot. to Dismiss, 11/26/19, at 18. Additionally, the Commonwealth maintains that, viewed in context, the prosecutor's statement could only lead to one inference: Appellant could easily intimidate his codefendant in prison and therefore the Commonwealth decided not to present the co-defendant at trial. *Id.* at 19.

Here, under the first step of the prosecutorial misconduct analysis, the prosecutor's statement concerning Appellant's codefendant does not lead to a logical inference from the evidence on the record. As trial counsel expressed, the Commonwealth did not present evidence that supported the conclusion that Appellant's co-defendant was being threatened in prison. More importantly, informing the jury that the Commonwealth feared for the co-defendant's safety leads to the inference that the co-defendant had crucial testimony worth sharing. Reason

15

suggests that the Commonwealth may not have feared for the co-defendant's safety if the co-defendant's testimony did not incriminate Appellant.

However, even with this improper inference, Appellant has not shown that the prosecutorial remarks caused the jury to reach an unfair guilty verdict based purely on bias. The Commonwealth presented a strong case against Appellant. Not only did the victim identify Appellant as the shooter, Appellant's child's maternal grandmother—Ms. Furman—identified him as the assailant. To the contrary, Appellant argues that the Commonwealth presented a weak case because Ms. Furman's did not appear in court to testify. PCRA Pet., 2/27/19, at 9. As discussed above, the Commonwealth provided substantial evidence, including many jail telephone conversations, showing Appellant and his associates coerced Ms. Furman to not appear at trial. Therefore, in conducting the second step of its prosecutorial misconduct analysis, the PCRA court found that the prosecutor's comment about Appellant's codefendant did not fix a bias and hostility in the jury's mind such that they could not weigh the evidence objectively and render a fair verdict.

Without demonstrating inevitable prejudice as required by the prosecutorial misconduct analysis, Appellant has not shown that his underlying claim has arguable merit. That is, even if trial counsel had objected on the grounds that the prosecutor's comment lead to an improper inference, trial counsel could not have shown unavoidable prejudice. More importantly, without showing inevitable prejudice for the underlying claim, Appellant necessarily failed to demonstrate he suffered prejudice under the ineffectiveness of counsel requirements. As a result, Appellant is not entitled to PCRA relief.

16

**D.** **Appellant is not Entitled to Relief because the Failure to Poll the Jury did not Constitute Ineffective Assistance of Counsel.**

In his fourth matter raised on appeal, Appellant contends that he received ineffective assistance of counsel when his trial counsel failed to request the jury be polled. Polling the jury allows parties to "determin[e] . . . before it is too late, whether the jury's verdict reflects the conscience of each of the jurors or whether it was brought through the coercion or domination of one of them by some of his fellow jurors or resulted from sheer mental or physical exhaustion of a juror." *Commonwealth v. Martin*, 109 A.2d 325, 327 (Pa. 1954). Our Supreme Court has held that an "accused has an absolute right to poll the jury to ensure that each juror voluntarily has joined in the verdict as written and announced." *Commonwealth v. Williams*, 640 A.2d 1251, 1266 (Pa. 1994) (citing *Commonwealth v. Martin*, 109 A.2d 325 (Pa. 1954)). Failure to do so, however, does not "constitute ineffective assistance of counsel in the absence of other factors." *Id.* Appellant has not demonstrated that had defense counsel polled the jury that it would have ended with a different result.

Here, in Appellant's view, due to the "history of uncertain, troublesome, and possibly misinformed deliberations, it was incumbent" upon trial counsel to request the jury be polled. App. Pet., 2/27/19, at 12. As the Commonwealth noted in its Motion to Dismiss, Appellant does not state with any specificity in his petition for relief whether there was undue pressure on a particular juror or that one of the jurors did not join on the verdict. It is the PCRA court's belief that Appellant's failure to plead his ineffective assistance of counsel claim with particularity precluded review. *See Commonwealth v. Brian*, 744 A.2d 713, 716 (Pa. 2000) (holding claims of ineffective assistance of counsel must allege with specificity sufficient facts in support of the

17

claim). The failure to plead with specificity the nature of the present claim inhibits the PCRA court's analysis and necessitates the preclusion of the claim on appeal.

Regardless, even reaching the merits of his claim, Appellant is not entitled to relief upon his claim that trial counsel provided deficient performance in failing to poll the jurors. To succeed on such a claim, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) the petitioner suffered actual prejudice. *Commonwealth v. Trieber*, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (internal citation omitted). A claim will be denied if the petitioner fails to meet any one of these prongs. *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009). The PCRA court found Appellant did not demonstrate that, had trial counsel polled the jury, there is a reasonable probability the result of the proceeding would have been different. Accordingly, Appellant has failed to demonstrate he suffered actual prejudice.

It is only with the presence of "other factors" will trial counsel's failure to poll a jury constitute ineffective assistance of counsel. *Williams*, 640 A.2d at 1266. There were no such "other factors" in Appellant's case that predicate a finding the jury's verdict is the product coercion or exhaustion. Appellant leans heavily upon the "uncertain [and] troublesome" history of the jury's deliberations. Such instances raised by Appellant include: the jury informing the trial court jurors had deadlocked on some counts; the trial court heard "yelling and screaming back there" during deliberations (and other colorful language the PCRA court now omits); requesting an alternate juror; and, questions about the definitions of conspiracy and attempted murder. Relevant factors in determining whether a jury verdict is the product of coercion or

18

fatigue include: the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of the trial, the solemnity of the proceedings, and indications from the jury on the possibility of reaching a verdict. *See Commonwealth v. Johnson*, 668 A.2d 97 (Pa. 1995), *cert. denied*, 519 U.S. 827 (1996). Held together, these instances reflect no more than a jury performing its duty to deliberate in consultation with one another. Spirited at points – though they may have been – the deliberations nonetheless fall within permissible standards.

However, Appellant impermissibly invites the reviewing court to infer the intensity of any "yelling and screaming" during deliberations. As the Superior Court has observed, the "difference between a whisper and a scream is not easily conveyed in the black and white print of a trial transcript[.]" *Commonwealth v. Culver*, 51 A.3d 866, 875 (Pa. Super. 2012). Such bald claims – absent specific facts from the record – do little more than provide background. Appellant's claim fails to illustrate the volume, duration, or the number of jurors involved, or any other number of factors, in the "yelling and shouting" throughout deliberations that could lead the PCRA court to find coercion. Without such facts establishing a nexus between the two, Appellant cannot demonstrate what impact – if any – the shouting ultimately had upon the jury's verdict or that it was improperly reached.

The PCRA court notes that the jury was provided a *Spencer* charge in the midst of its deliberations. *See Commonwealth v. Greer*, 951 A.2d 346, 349 (Pa. 2008) (A *Spencer* charge is a non-coercive charge instructing the jurors to be true to their convictions but to reconsider their original views). After confirmation the jury had deadlocked on certain charges, the trial court gave the following instruction:

> You will realize of course all members of the panel that, one, any verdict returned must be a unanimous verdict. Two, that you have a duty to consult with one another and deliberate with a view to reaching an agreement, if it can be done without any violence to your own sense of individual judgment. Three, each juror

19

decide the case for himself, but only after impartial consideration of the evidence with his fellow jurors. And, four, that a juror should not hesitate to reexamine his own views and to change his opinions if he thinks it is erroneous . . . [F]ive, that no juror should surrender his honest convictions to the weight or effect of the evidence because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

Keeping these instructions in mind, [the trial court] will be sending [the jury] back to deliberate so that [it] can further consider the evidence and the charges of the court to see if you can arrive at a verdict.

N.T. Jury Trial, 2/28/16, at 12-13. Appellant offers nothing beyond conjecture that the unanimous verdicts resulted from coercion or exhaustion and was not instead a product of the *Spencer* charge given by the court. *See Commonwealth v. Huggins*, 68 A.3d 962, 973 (Pa. Super. 2013) (holding the law presumes that the jury will follow the instructions of the court). From a temporal standpoint, the "yelling and screaming" of which Appellant complains occurred well before the *Spencer* charge was given to the jury. It is reasonably probable that jurors followed the trial court's instruction to reexamine their views and change their respective opinions if necessary. In the *Spencer* charge, the trial court instructed jurors to consult with one another during deliberations and never surrender their honest convictions solely to return a verdict. It appears that any conflict was resolved after jurors received the *Spencer* charge, as no references in the record demonstrate any disagreements after that point.

Additionally, the PCRA court addresses the potential impact between the amount of time for which the jury deliberated, the *Spencer* charge given by the trial court and when the jury was able to reach a unanimous verdict. After many hours of deliberation, multiple questions about legal definitions of certain terms and the inability – to that point – to reach a verdict, the trial court finally gave a *Spencer* charge and instructed the jurors that their lunch was "being delivered, hopefully the next 20 or 25 minutes. If, after you have enjoyed your lunch, you have decided that you cannot come to a unanimous decision you can tell [the court that] you are hung"

20

on the charges. N.T. Jury Trial, 2/2/16, at 15. The record reflects that the trial court informed jurors they had "about an hour of time to try to come to a resolution of whatever issues you still have outstanding[.]" *Id.* This is precisely what the jury did: it followed the trial court's instruction that it must reach a verdict within that timeframe or inform the court that it was deadlocked on certain charges.

To the extent Appellant may argue the short amount of time between the *Spencer* charge and the verdict may support an inference of coercion – and by extension that trial counsel was ineffective by failing to poll the jury – this claim is also without merit.[3] On January 29, 2016, the jury was initially excused to begin its deliberations at 3:20 p.m. *See* N.T. Jury Trial, 1/29/16, at 50. On February 2, 2016, the jury was excused to deliberate once again after it received the *Spencer* charge at 11:45 a.m., and the verdict was announced at 1:45 p.m. that same day. The short time span between the *Spencer* charge and verdict is not dispositive. For instance, in *Commonwealth v. Marion*, the Superior Court found the trial court did not abuse its discretion in giving supplemental instructions to deadlocked jurors by directing them to deliberate for 45 more minutes with a fresh look at the case and try to resolve their differences. *See Commonwealth v. Marion*, 981 A.2d 230, 233 (Pa. Super. 2009). Here, and similar to the appellant in *Marion*, the extra hour provided by the trial court was not a "time fuse" for the jury to deliberate, but instead only left open the possibility for future deliberations. *Id.* The jury exercised this possibility and followed the trial court's *Spencer* charge to reach a unanimous verdict.

As it relates to the underlying ineffective assistance of counsel claim, Appellant has not demonstrated that trial counsel's failure to poll the jury claim has arguable merit or reasonably probable that a different result was likely. Despite the PCRA court's belief that Appellant has not

---

[3] A verdict brought about by judicial coercion is a legal nullity. *Commonwealth v. Greer*, 951 A.2d 346 (Pa. 2008).

21

proved either prong, the failure to prove even one prong necessitates the failure of such ineffective assistance of counsel claims. *Daniels*, 963 A.2d at 419. Appellant paints with narrow strokes ignoring the broader picture: considerable evidence existed from which the jury could find Appellant guilty beyond a reasonable doubt. Briefly, and without recounting the sufficiency of the evidence, the jury saw video of a person the jury – as fact-finder – later identified as Appellant engaged in the shooting. The jury heard testimony about Appellant's efforts to engage in witness tampering to prevent his prosecution. Given the substantial evidence presented, any effort in polling the jury by trial counsel would have served only as a quixotic endeavor because the outcome would not have had a different result.

The PCRA court recognizes that Appellant raised a substantially similar claim during direct review; however, Appellant now submits an alternate theory of relief rising from trial counsel's failure to poll the jury. While the claims may be distinct from one another within the context of PCRA proceedings, the conclusion mirrors that decided on direct appeal: Appellant is due no relief. In its opinion, a different panel of the Superior Court found:

> Instantly, during the course of deliberations, some jurors made the trial court aware that other jurors "looked up the definition of conspiracy."
>
> On appeal, Appellant argues the failure to question the jurors is reversible error under these circumstances in case the jurors "discussed this information with the other jurors."
>
> Based on the evidence posed by the jurors in bringing this the court's attention, it is evident the jurors were very forthcoming about any extraneous information the jury may have had. Furthermore, we agree with the trial court that even though the definition of a conspiracy was a central issue in this, **Appellant has not set forth any argument that he could have been possibly prejudiced** by any definition of conspiracy that may have been obtained from Google by one or more jurors.

*Commonwealth v. Seals*, 2819 EDA 2016 (Pa. Super. April 30, 2018) (unpublished memorandum) (emphasis added). Within the context of the PCRA, as it relates to prejudice for

22

ineffective assistance of trial counsel, Appellant has not demonstrated prejudice. Following the trial court's discovery that jurors may have consulted outside sources for the legal definition of conspiracy, the trial court reminded jurors that it had provided the jury the instruction "on what [the] conspiracy charge was and what you had to find if you were to find [Appellant] guilty of conspiracy[.]" N.T. Jury Trial, 2/2/16, at 10. The trial court also stated that jurors were welcome to continue asking any questions it may have to assist in reaching a verdict. *See id.* at 15. Thus, the trial court provided a curative instruction on what it may consider in its deliberations and offered ongoing assistance to jurors.

In sum, Appellant asked the PCRA court to grant relief on the basis that trial counsel's failure to poll the jury constituted ineffective assistance of counsel. The PCRA court concluded no relief is due because Appellant has not demonstrated that his claim had arguable merit or that he suffered prejudice due to counsel's alleged error. Instead, Appellant's claims are extinguished by the *Spencer* charge given by the trial court to overcome any disagreement – or claimed coercion – amongst jurors and the substantial evidence presented at trial that proves Appellant's guilt beyond a reasonable doubt. Therefore, Appellant is not entitled to relief on that basis.

## II.    The PCRA Court Properly Dismissed Appellant's Petition without an Evidentiary Hearing because Appellant did not Demonstrate any Genuine Issues of Material Fact.

Finally, the PCRA court addresses Appellant's fifth claim that the PCRA court erred in dismissing his petition without a hearing. A PCRA court has discretion to dismiss a petition without a hearing when it is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction relief, and legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1); *see also Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa. Super. 2008). A reviewing court "must examine the issues raised in

23

the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Springer*, 961 A.2d at 1644. When the PCRA court has dismissed a petitioner's PCRA petition without an evidentiary hearing, our appellate courts review the PCRA court's decision for an abuse of discretion. *Commonwealth v. Roney*, 79 A.2d 595, 604 (Pa. 2013). Likewise, to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant "must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Cousar*, 154 A.3d 287, 297 (Pa. 2017).

Appellant contends that he was an entitled to an evidentiary hearing to develop his claims of ineffective assistance of counsel related to four differing issues. As detailed above, each of the four issues did not raise genuine issues of material fact that required an evidentiary hearing. Reviewing each claim independently below, the PCRA court summarizes its conclusion that, in light of the record before it, Appellant raised no genuine issues of material fact that entitled him to an evidentiary hearing.

In Appellant's first issue, he claims he was entitled to an evidentiary hearing based upon trial counsel's failure to object to the entry of Ms. Furman's witness statement into evidence. Appellant was not entitled to an evidentiary hearing on this basis because it was addressed – and found meritless – on direct appeal by the Superior Court. The PCRA court found Appellant's contention unavailing. Consistent with Pa.R.E. 804(b)(6), the Superior Court found no abuse of discretion in allowing the introduction of F.F.'s statement into evidence because Appellant intentionally attempted to cause the unavailability of witnesses, including Ms. Furman. *See Seals*, 2819 EDA 2016, at 7. Further, during unitary review, the Superior Court stated that

24

although trial counsel failed to preserve the issue when there was no objection, even if "Appellant had not waived this issue [on direct appeal], he would not be entitled to relief." *Id.* at *6. Accordingly, Appellant was not entitled to an evidentiary hearing on this basis.

In his second issue raised, Appellant asserts that he was entitled to an evidentiary hearing on the basis that trial counsel failed to object when the trial court advised jurors that Appellant had successfully prevented witnesses from testifying at trial. The PCRA court concluded Appellant was not entitled to an evidentiary hearing that trial counsel failed to object to the "consciousness of guilt" charge during trial. The PCRA court concluded that there were no genuine issues of material fact toward this claim because trial counsel did object – on the record – to the trial court's "consciousness of guilt" charge. Given that Appellant's claim is betrayed by the trial record, there was no genuine issue of material fact because trial counsel did perform the act. Thus, Appellant could not establish the PCRA court erred in dismissing his claim without an evidentiary hearing on this basis because he was not entitled to relief.

Third, Appellant alleges he was entitled to an evidentiary hearing for another ineffective assistance claim because trial counsel did not object to a comment made by the Commonwealth during its closing argument that his co-defendant was not called to testify due to concern for the co-defendant's safety. However, even assuming that such a comment was improper, it did not result in inevitable prejudice against Appellant. Accordingly, because any claim premised around the Commonwealth's statement during its closing argument would have been unsuccessful, Appellant has not met the threshold requirements to demonstrate prejudice within a PCRA claim for ineffective assistance of counsel.

25

Finally, Appellant claims the PCRA court erred in not holding an evidentiary hearing due to trial counsel's failure to poll the jury. In effect, Appellant attempts claim that he received deficient assistance of counsel because the verdict could have been the product of coercion or overall exhaustion. There is nothing within the trial court record that may support such a conclusion. Appellant does not offer any facts to demonstrate the verdict was reached through coercion or exhaustion and not instead from the trial court's *Spencer* charge. Because Appellant is unable to identify that the verdict was the result of coercion or exhaustion, he has not shown that had counsel polled the jury then it would have resulted in a different outcome. Therefore, Appellant was not entitled to an evidentiary hearing on this claim because there were no genuine issues of material fact that would require a hearing on that basis.

Stated succinctly, Appellant was not entitled by right to an evidentiary hearing for any of his ineffective assistance of counsel claims. Accordingly, the PCRA court did not err in dismissing his petition without an evidentiary hearing since he failed to raise any genuine issue of material fact.

## **CONCLUSION**

Appellant appeals from the February 26, 2020, Order, entered in the Philadelphia County Court of Common Pleas dismissing his petition for post-conviction relief, filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. For the reasons reflected above, the PCRA court dismissed the petition without hearing because he has failed to raise a genuine issue of material fact. The PCRA court concluded that each of the four ineffective assistance of

26

counsel claims Appellant raised warrant no relief. Therefore, the PCRA court respectfully requests that the decision of the lower court be affirmed on appeal.

BY THE COURT:

_____
SEAN F. KENNEDY, J.

27